Newell, J., delivered the opinion of the Court in which Keller, PJ., Hervey, Richardson and Keel, JJ., joined. ALCALA, J., filed a concurring opinion. Yeary, J., filed a dissenting opinion. Walker, J., filed a dissenting opinion in which Yeary, J., joined. KEASLER, J., dissented.
A person engages in "organized criminal activity" if, with the intent to participate in a crime ring, the person commits or conspires to commit one or more of various predicate crimes.[1] But in order to convict someone of "engaging," does the jury have to unanimously agree on the specific predicate crime committed by the defendant? No. We hold that the commission of each predicate crime constitutes a different manner and means of committing the single offense of engaging in organized criminal activity. We affirm the court of appeals' holding that the trial court did not err in instructing the jury in the disjunctive regarding the predicate offenses in this case.[2]
I. Background
A. Facts
Appellant was tried on one count of engaging in organized criminal activity. That count alleged that Appellant, with the intent to establish, maintain, or participate in a combination[3] or in the profits of a combination, committed second degree theft or second degree money laundering.[4] The theory was that Appellant was part of a criminal ring that committed multiple jewelry store heists. The biggest heist, and the focus of the trial, was that of a Houston store called Karat 22, which was owned by Aku Patel. As the name might imply, Karat 22 specialized in high-quality gold jewelry.
Appellant, his brother John, and John's wife Derenda owned New York Gold and Silver stores in the Dallas/Fort Worth area.[5] Jason Kennedy, a long-time friend of the brothers, helped John with the stores. Derenda ran the books. The O'Brien stores sold average-quality jewelry, *380 generally made with 14-carat gold. They would also buy gold from walk-in clients. After they had purchased a sufficient amount of gold, they would smelt it and take it to a refinery, which would then wire the payment for the gold. The payments for such gold were typically no more than $10,000 per week.
On Saturday, February 5, 2011, John called Kennedy and told him that they had "some work" to do-meaning they were going to break into a jewelry store. Kennedy grabbed some dark clothes and drove his truck to John's. There, they loaded some tools, including grinders, drill bits, and concrete cutters, into the truck, they picked up Appellant, and they drove towards Houston. John told them that they were "going to hit Karat 22."
Typical of jewelry heists, the men wore dark clothes and ski masks to avoid being identified on camera, gloves to avoid leaving fingerprints, walkie-talkies to communicate, and headlamps so they could see in the dark. They waited for the store and nearby businesses to close. Then, around 6:30 p.m., Appellant went up to the roof, cut a hole in it, and disabled the alarm while Kennedy and John acted as lookouts.
All three men went to a nearby strip club and waited for about an hour to see whether Appellant had tripped any alarms. After confirming no alarms had been tripped, Appellant and Kennedy climbed on to the roof of the building, into the attic, and on to the top of the vault, where they spent two to three hours cutting through the vault's concrete top. Appellant entered the vault through the hole they had cut and then cut open the vault door.
The vault was full of jewelry. The men gathered hundreds of pounds of it. They used a large shop vacuum to move it. Kennedy estimated that it took them about three hours to empty the vault and that they took virtually everything. The men loaded the jewelry into Kennedy's truck. According to Patel, the total value of Karat 22's inventory at the time of the heist was around four million dollars.
Appellant and his crew finished with the store around 4:30 a.m. On the drive back, John called Derenda and asked her to open the Watauga store. Derenda met them at the store, where they unloaded, sorted, and started smelting jewelry to make blocks of gold.
On February 7, 2011, John arrived at Millennium Precious Metals in Dallas with two buckets full of gold bars. The gold was 84 percent pure, which put it at a little over 20 karats, and it weighed 99 pounds. A couple of days later, John brought Millennium another bucket of gold bars weighing about 85 pounds. That gold was 80 percent pure, or a little over 19 karats. New York Gold and Silver Exchange received two wires from Millennium within days after the heist; the first was $1.6 million, the second was $1.3 million. Bryan Vaclavik, the chief fraud examiner for the Harris County District Attorney's Office, testified that the approximately $3 million inflow from Millennium in February 2011 was inconsistent with activity in the New York Gold and Silver Exchange account both before and after the deposit of that money.
On February 18, 2011, $1.2 million was transferred from John's bank to Appellant's bank, and Appellant started making purchases. He bought a $500,000 house with a pool, a Ferrari, a Range Rover, and a boat. John spent some too. He paid $1.1 million for heavy equipment for his construction crane business.
During a search of Appellant's home, agents seized several appraisals for loose diamonds that matched the statistics for some of the certified diamonds stolen from Karat 22. Appellant acknowledged the importance *381 of the appraisals when John called him on a recorded jail line. Several cut-off wheels, of the type used to cut through the vault's concrete top, and a hand grinder were also seized.
B. Trial
Appellant's defense at trial was that he and John were legitimate businessmen and that their money came from the operation of their jewelry stores and John's crane business. Brian Wallace, the owner of Millennium Precious Metals, testified that he had a business relationship with John and Derenda. Wallace testified that over the course of this business relationship he bought gold from them hundreds of times and millions of dollars changed hands. Wallace testified that he did not have any suspicion that the gold John brought to him in February 2011 was stolen.
The application portion of the jury charge, to which Appellant did not object, presented the two predicate offenses-theft and money laundering-in the disjunctive.
Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant, KELVIN LYNN O'BRIEN, heretofore on or about August 13, 2007 and continuing through April 12, 2013, did then and there unlawfully, with intent to establish, maintain or participate in a combination or in the profits of a combination, said combination, consisting of Kelvin O'Brien and at least two of the following: John O'Brien and/or Derenda O'Brien and/or Jason Kennedy, commit the offense of theft in that the defendant on or about February 6, 2011 did unlawfully appropriate by acquiring or otherwise exercising control over property, namely, gold, jewelry, gems and watches owned by C. Patel or Karat 22 Jewelers of the value of over two hundred thousand dollars with the intent to deprive C. Patel or Karat 22 Jewelers of the property then you will find the defendant guilty as charged in the indictment; or
If you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant, KELVIN LYNN O'BRIEN, heretofore on or about August 13, 2007 and continuing through April 12, 2013, did then and there unlawfully, with intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of Kelvin O'Brien and at least two of the following: John O'Brien and/or Derenda O'Brien and/or Jason Kennedy, commit the offense of money laundering, namely in that he heretofore on or about August 13, 2007 and continuing through April 12, 2013, did then and there unlawfully, knowingly transfer, invest or expend funds which constituted the proceeds of criminal activity, of the value of at least two hundred thousand dollars by purchasing a house, by purchasing a pool, by purchasing motor vehicles, by purchasing a boat, by purchasing a watch, by purchasing heavy equipment, by moving funds from one bank account to another or by paying bondsmen's fees, then you will find the defendant guilty as charged in the indictment.
The word "unanimously" appeared in the section of the jury charge dealing with selection of the jury foreman:
After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.
*382 Without objection, the prosecution explained at closing, as it had in voir dire, that the jury did not have to agree on whether Appellant committed the predicate offense of theft, or that of money laundering. Appellant was convicted and punishment was assessed at life in prison.
C. Appeal
Though Appellant did not object to the jury charge at trial, he argued on appeal that the jury instructions permitted a non-unanimous verdict. Specifically, he argued the application paragraph did not require the jury to be unanimous regarding which predicate offense had been committed by Appellant and his criminal combination. According to Appellant, the predicate offenses of theft and money laundering were essential elements of the offense of engaging in organized criminal activity rather than alternate manner and means.
The court of appeals disagreed. The court explained that when an indictment alleges "several different overt acts," these are alternate manner and means of committing the offense of engaging in organized criminal activity.[6] Because the predicate offenses were the manner and means for committing the same offense, the court held that instructing the jury in the disjunctive regarding the predicate offenses was not error.[7] According to the court of appeals:
If the specific enumerated offense was an essential element of the offense of engaging in organized criminal activity, then the use of the term "one or more" would be meaningless, because the commission of each enumerated offense would constitute a separate instance of the offense of engaging in organized criminal activity.[8]
Appellant petitioned this Court to determine whether the court of appeals erred in holding that unanimity is not required with respect to the predicate offenses of theft and money laundering. As he points out, his case is unique in that he was charged with committing two different predicate offenses rather than multiple instances of the same predicate offense. We therefore granted review.
II. Analysis
A. The Right to a Unanimous Verdict
Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict.[9] The jury must agree that the defendant committed one specific crime, but this does not mean that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act.[10] A jury must unanimously agree on each essential element of the crime in order to convict.[11] But the requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense.[12]
We have previously explained that deciding a jury unanimity challenge *383 can require us to answer two interrelated questions.[13] First, we examine the language defining the penal offense to determine whether the Legislature has created a single offense with multiple or alternate modes of commission.[14] We determine what the jury must be unanimous about by conducting a statutory analysis that seeks to ascertain the focus or gravamen of the offense.[15] If the gravamen of the crime is the "result of the conduct," the jury must be unanimous about the specific result required by the statute but not the specific conduct.[16] If the gravamen of the crime is the "nature of the conduct," the jury must be unanimous about the specific criminal act committed.[17] And if the gravamen of the crime is a "circumstances surrounding the conduct," unanimity is required about the existence of the particular circumstance of the offense.[18]
Second, we ask whether jury unanimity on the alternate means or modes of commission-the brute facts of the offense-is nevertheless required as a matter of due process because the alternate means are so disparate as to become two separate offenses.[19] The Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition.[20] But as a plurality of the United States Supreme Court noted in Schad v. Arizona , it is "impossible to lay down any single analytical model for determining when two means are so disparate as to exemplify two separate offenses."[21] In *384 Jefferson v. State , we explained that we answer this due process question by determining whether the acts or omissions that combine to establish an offense are "basically morally and conceptually equivalent."[22]
As we explain more fully below, engaging in organized criminal activity is a "circumstances of the conduct," offense, the circumstance being the existence or creation of a combination that collaborates in carrying out criminal activities.[23] Consequently, the jury was not required to be unanimous regarding the individual predicate offenses because they are a different manner and means of committing the same offense. Moreover, treating the predicate offenses as manner and means in this case does not run afoul of due process because the offenses at issue are morally and conceptually equivalent. Consequently, the trial court properly instructed the jury in the disjunctive with regard to the predicate offenses of theft and money laundering.
B. The Gravamen of "Engaging"
As discussed above, jury unanimity is required on the essential elements of the offense, but it is generally not required on the alternate manner or means of commission.[24] Therefore, it is necessary to identify the focus or gravamen of an offense and the alternate modes of commission, if any.[25] As the court of appeals recognized, this inquiry is primarily a question of legislative intent.[26] To determine the collective intent of the Legislature, we look to the statutory text because it provides the best means to determine that intent.[27] If the plain language is clear and unambiguous, our analysis ends because " 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.' "[28] We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.[29] Only where a statute is ambiguous or would lead to an absurd result do we consider extra-textual sources.[30] Ambiguity exists when reasonably well-informed persons may understand the statutory language in two or more different senses.[31]
Section 71.02(a) of the Texas Penal Code provides that
*385 (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:
(1) murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, aggravated sexual assault, sexual assault, continuous sexual abuse of young child or children, solicitation of a minor, forgery, deadly conduct, assault punishable as a Class A misdemeanor, burglary of a motor vehicle, or unauthorized use of a motor vehicle;
(2) any gambling offense punishable as a Class A misdemeanor;
(3) promotion of prostitution, aggravated promotion of prostitution, or compelling prostitution;
(4) unlawful manufacture, transportation, repair, or sale of firearms or prohibited weapons;
(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception;
(5-a) causing the unlawful delivery, dispensation, or distribution of a controlled substance or dangerous drug in violation of Subtitle B, Title 3, Occupations Code;
(6) any unlawful wholesale promotion or possession of any obscene material or obscene device with the intent to wholesale promote the same;
(7) any offense under Subchapter B, Chapter 43,1 depicting or involving conduct by or directed toward a child younger than 18 years of age;
(8) any felony offense under Chapter 32;
(9) any offense under Chapter 36;
(10) any offense under Chapter 34, 35, or 35A;
(11) any offense under Section 37.11(a);
(12) any offense under Chapter 20A;
(13) any offense under Section 37.10;
(14) any offense under Section 38.06, 38.07, 38.09, or 38.11;
(15) any offense under Section 42.10;
(16) any offense under Section 46.06(a)(1) or 46.14;
(17) any offense under Section 20.05 or 20.06; or
(18) any offense classified as a felony under the Tax Code.[32]
Additionally, Section 71.01(a) defines the term "combination" as follows
(a) "Combination" means three or m ore persons who collaborate in carrying on criminal activities, although:
(1) participants may not know each other's identity;
(2) membership in the combination may change from time to time; and
(3) participants may stand in a wholesaler-retailer or other *386 arm's-length relationship in illicit distribution operations.[33]
The State argues that the "intent to participate in a combination" is the gravamen of "engaging." But a culpable mental state is not a conduct element; the conduct element is what the culpable mental state applies to.[34] We must therefore look to the text of the statute to discern what the conduct elements are to determine the focus or gravamen of the offense.
1. The Eighth-Grade-Grammar Test
One analytical model this Court has employed in determining whether different methods of committing a single offense are at issue or whether different offenses are alleged is to focus on the statutory verb and its direct object defining the criminal act.[35] Appellant argues that the use of this eighth-grade-grammar test leads to the conclusion that each predicate offense is a separate element of engaging in organized criminal activity that requires jury unanimity. In a concurring opinion in Jefferson v. State , Judge Cochran articulated how this test should generally operate.
In sum, we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e. the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific intent regardless of the date alleged). Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.[36]
In this case, the indictment and the jury charge used the preposition "by" to describe the manner in which the predicate offenses were alleged to have been committed rather than as a way to differentiate between the two predicate offenses of theft and money laundering.[37] According to Appellant, this indicates that predicate offenses are elements rather than manner and means.
But Appellant's argument overlooks that the eighth-grade-grammar test is a method of analyzing the statutory text to determine the elements of an offense. It is not keyed to the indictment or the jury charge. Judge Cochran said as much when she first proposed the test in Jefferson . According to her concurring opinion, "To determine the forbidden conduct, we look to the statute defining the penal offense."[38] And when a majority of the Court first applied the test in Stuhler v. State , the Court looked to the text of Section 22.04 of the Penal Code itself to determine the *387 elements of injury to a child without reference to the indictment or the jury charge.[39] How the trial court phrases the application paragraph in the jury charge for a particular case does not provide us with any insight into the legislative intent behind the drafting of a particular offense. Accordingly, we apply the rules of grammar to the text of the statute describing the offense in the context of the entire statutory scheme to attempt to discern the Legislature's intent in passing the statute.
2. Result of Conduct vs. Nature of Conduct
Application of grammar rules to the text of the statute reveals similarities between section 71.02 and result-oriented crimes. Like "result of conduct" crimes, it features a verb ("commits or conspires to commit") that requires a direct object ("one or more of the following") upon which the verb acts.[40] Further, the descriptions of the predicate offenses that would take the place of "one or more of the following" do not limit the statute to particular conduct.[41] That is, the Legislature did not appear concerned with how a particular predicate offense is committed. Instead, it appeared concerned that the predicate offense resulted from a criminal combination's collaboration in carrying on criminal activities.
This structure appears similar to the felony murder statute we analyzed in White v. State .[42] In White , we noted that Section 19.02(b)(3) of the Penal Code uses the transitive verb "commits" followed by the term "felony" and this bolstered our conclusion that the identity of the underlying felony in a felony murder case was simply a different manner and means of committing the "felony" element of the statute.[43] So the argument goes that the predicate felony offenses in Section 71.02 are also merely manner-and-means because the "one or more of the following" element of the engaging in organized criminal activity statute follows the a verb-object structure similar to the felony murder statute.[44]
Appellant argues that the Legislature's decision to list specific offenses-each with different elements-in Section 71.02 distinguishes the engaging statute from the felony murder statute. According to Appellant, listing specific offenses in the engaging statute-rather than any felony as in the felony murder statute-demonstrates the Legislature's focus on the nature of the conduct rather than on a particular result. We disagree.
The predicate offenses listed in Section 71.02(a) are not limited to nature of the conduct offenses. Instead, Section 71.02(a) provides a list of specific offenses including result-oriented offenses, conduct-oriented offenses, and circumstance-oriented offenses with no attempt to limit the ways in which each predicate offense can be committed. Taken as a whole, this list of offenses is not limited to or focused upon particular types of conduct; the focus is upon the commission of organized crime. Thus, we cannot say the Legislature's choice to enumerate a number of predicate *388 offenses evinces a focus upon particular types of conduct.
We agree with the State that the distinction that Appellant seeks to draw between the felony murder statute and the engaging statute is a distinction without a difference. The Legislature's use of the category "felony" in the felony murder statute allows for the application of the murder statute to a murder caused in the commission of a broad number of different felonies, each with different culpable mental states and conduct elements. In the engaging statute, the focus is on the creation of crime rings that result from the pursuit of a collective and continuous course of criminal behavior. And, as with felony murder, engaging can be based upon the commission of crimes with a number of different conduct elements.[45]
More importantly, as the court of appeals noted, the engaging statute also contains the phrase "one or more of the following" which demonstrates the Legislature's focus upon the creation or existence of a criminal combination rather than upon a specific predicate offense. By including the phrase "one or more of the following" in the statute, the Legislature demonstrated that it was not as focused upon the commission of a specific predicate offenses as it was upon organized crime. Interpreting the engaging statute as a "nature of conduct" offense would, as the court of appeals noted, render the Legislature's use of the phrase "one or more of the following" meaningless.
Similarly, the way the Legislature established the degree of offense also cuts against treating engaging as a nature-oriented offense. Subsection (b) sets the degree of offense "one category higher than the most serious offense listed in Subsection (a) that was committed." So while the degree of offense is tied to a predicate offense, the Legislature chose not to treat each committed predicate crime as a separate "engaging" offense. This further demonstrates the Legislature's focus upon a criminal ring committing multiple crimes as part of a collaboration to carry out criminal activities rather than a focus upon individual predicate crimes.[46] We disagree *389 that engaging is a conduct-oriented offense.[47]
Yet, Appellant is correct that the comparison to the felony murder statute is not entirely apt. The felony-murder statute also requires a showing of a particular result by its own terms, namely that a defendant caused a death.[48] Under the felony-murder statute, the underlying felony offenses all share a common nexus; all underlying felonies are related to dangerous conduct that can cause the death of an individual.[49] Section 71.02 does not have similar language specifying a single result that ties the underlying predicate offenses together. In that sense, engaging in organized criminal activity also does not appear to be a "result of conduct" crime even though the listed predicate offenses in 71.02 are the direct objects of the verb "commits."
3. Circumstances Surrounding the Conduct
So, there are arguments to suggest that engaging in organized criminal activity is a "result of the conduct" crime. And there are also arguments to suggest that engaging in organized criminal activity is a "nature of the conduct" crime. Yet neither position provides a comfortable fit. Ultimately, both of these competing interpretations fail to account for the requirement that these offenses be committed to establish, maintain, or participate in a criminal combination. The statute's focus upon a criminal combination that collaborates in carrying on criminal activities reveals that engaging in organized criminal activity is most naturally considered a "circumstances surrounding the conduct" offense.
We seem to have implicitly recognized this in Nguyen v. State . There, we considered the meaning of the phrase "collaborate in carrying on criminal activities" as it is used in the statutory definition of the term "combination." In doing so, we addressed whether this phrase required a showing of an agreement by three or more *390 people to carry out a single crime.[50] We held that it required "something more" than that because the use of the plural "activities" implies that the combination at issue must do more than one thing.[51] Moreover, we observed that the opposite interpretation of the statute would add nothing more than the words "three or more."[52] This would essentially render the phrase "collaborate in carrying on criminal activities" superfluous.[53]
We also rejected the argument that the proof of an intent to engage in a continuing course of criminal activities required a showing of a series of criminal acts.[54] We explained that evidence that might support a showing of an intent to establish a combination did not foreclose the possibility that the proscribed action may be the first actual crime committed by a member of the combination.[55] In this way, we distinguished engaging in organized criminal activity from other "nature of the conduct" offenses. To convict of engaging in organized criminal activity it is enough to show the collaboration to commit criminal activities including the commission of one of many possible offenses; the focus is upon the collaboration, not upon which offense is committed.[56]
This is analogous to our recent decision in Kent v. State . There, we held that Section 31.09 of the Penal Code -the aggravated theft statute-demonstrated the Legislature's intent to treat numerous thefts conducted pursuant to a "scheme or continuing course of conduct" as a single offense.[57] We determined that the culpable criminal behavior was the continuing course of conduct, not each individual theft used to prove the scheme or course of conduct.[58] In light of this determination, we held that a jury need not unanimously agree upon every individual instance of theft so long as it unanimously agrees that the aggregated thefts were committed pursuant to a continuing course of conduct.[59] The evidence is sufficient if the State proves that the defendant "illegally appropriated enough property to meet the aggregated value alleged."[60] Even though a defendant is accused of multiple different misappropriations, he is still charged with a single criminal offense.[61]
*391 Similarly, we conclude that, for an adequate showing of an "intent to establish, maintain, or participate in a combination or in the profits of a combination" in an engaging case the State must show that the predicate offense was committed as part of a collaboration of three or more people working together in a continuing course of criminal activities.[62] This existence of "something more" points to a "circumstance surrounding the conduct."[63] The jury must be unanimous that a defendant committed at least one of the enumerated offenses as part of a collaboration to carry on criminal activities. But, similar to the way the aggregate theft statute works, the jury does not have to agree on which specific offense was committed in an engaging case so long as everyone agrees that at least one of the listed offenses was committed as part of a collaboration in carrying out criminal activities. Having determined that the gravamen of the offense of engaging in organized criminal activity is the circumstance surrounding the conduct, we hold that the Legislature intended to treat the individual predicate offenses listed in the statute as alternate manner and means of committing the offense of engaging in organized criminal activity.
4. Commit or Conspires to Commit
This understanding of the engaging statute is consistent with the cases relied upon by the court of appeals. For example, the court of appeals based its decision upon Renteria v. State . In that case, the State alleged in two different paragraphs that a defendant had engaged in single offense of organized criminal activity when he, as part of a criminal combination, stole 136 cars and then sold those cars for money.[64] One paragraph alleged the commission of a theft of cars, while the other paragraph alleged the theft of money from the sale of those cars.[65] The defendant in that case argued that the State was required to elect a single paragraph to proceed upon in the charge.[66]
But the court of appeals disagreed. The court of appeals explained, "The fact that the State alleged two types of theft did not convert the offense of organized crime into two separate offenses."[67] The court of appeals went on to hold that the two different types of theft were simply the alternate modes or means of committing the single offense of engaging in organized criminal activity.[68]
*392 Appellant argues that his case is distinguishable from Renteria because that case dealt with multiple instances of the same listed predicate offense. But his argument pre-supposes that engaging is a nature-oriented offense, which, as discussed above, it isn't. Moreover, it limits the text of the statute. As we explained in Nguyen , had the Legislature intended to limit the definition of "combination" to cover a collaboration to commit a single crime, it would have used the phrase "collaborate in committing a criminal act."[69]
The same logic applies here; had the Legislature intended to limit the definition of "combination" to a collaboration to commit a single type of predicate offense it would not have used the phrase "collaborate in carrying on criminal activities." Instead, the natural language would have been "collaborate in committing one or more of the offenses listed in Section 71.02(a)."[70] Further, the Legislature's use of the phrase "one or more of the following" and tying the degree of the offense to the most serious type of offense committed demonstrates the Legislature's awareness that crime rings typically collaborate to commit an array of different crimes pursuant to a common scheme rather than specialize in one specific type of crime. The Legislature clearly sought to criminalize crime rings of any stripe, not just boutique crime rings.
Appellant also criticizes the court of appeals for relying on cases involving allegations of engaging in criminal activity through conspiracy to commit an offense rather than the commission.[71] Appellant's position is understandable as he points out that we have previously acknowledged the distinction between engaging based upon conspiracy and engaging based upon commission.[72] Appellant is correct that the court of appeals appears to have blurred the lines between these two types of engaging cases when it characterized the predicate offenses as "overt acts."[73] When the State charges a defendant with engaging by conspiracy-as with any conspiracy-jury unanimity is not required regarding the particular overt acts alleged because *393 the gravamen of the offense is the agreement.[74]
But Appellant is incorrect that engaging by commission should necessarily be treated like an enhancement to one of the predicate offenses simply because it is not engaging by conspiracy. As discussed above, engaging in organized criminal activity by commission still requires a showing of a collaboration in carrying on criminal activities in addition to the commission of one or more predicate offenses.[75] Engaging by commission simply punishes a conspiracy involving three or more people that results in the completion of at least one of the conspired crimes.[76]
When the State charges a defendant with engaging by conspiracy-as with any conspiracy-the State is not required to show a completed offense.[77] When the State charges a defendant with engaging by commission, it must show at least one completed offense. But in both types of offenses, the State still must prove the existence of a criminal combination.[78] Given this, the court of appeals properly relied upon engaging by conspiracy cases to inform its analysis. However, it erred by referring to the underlying predicate offenses as "overt acts" to the extent that this mixing of terminology implied the State was not required to prove a completed offense.
C. The Theft and Money Laundering Offenses Were Morally and Conceptually Equivalent
Having determined what the jury was required to be unanimous about, we turn to the question of whether treating each predicate offense as alternate manner and means violates due process.[79] To answer this question we ask whether the two predicate offenses that establish the different manner and means of the engaging offense in this particular case are morally and conceptually equivalent.[80] In Contreras v. State , we seemed to have added to this inquiry by considering first-in the context of felony murder-whether due process requires the underlying felonies in felony murder to be morally and conceptually equivalent given the statutory scheme set out in the felony murder statute.[81] As we explained, "In Jefferson , we discussed Justice Scalia's suggestion in Schad v. Arizona , that due process would not permit the submission of alternative theories of criminal liability for novel 'umbrella' crimes, such as a felony consisting of either *394 robbery or the failure to file a tax return."[82] Thus, we recognized that certain crimes could arbitrarily tie two unrelated crimes together as alternate manner and means into a single statutory offense.[83] We held in Contreras that felony murder isn't one of those crimes.[84]
Appellant argues, however, that engaging in organized criminal activity is one of those crimes. We need not decide that question in this case because it is enough to say that the two predicate offenses alleged here-theft and money laundering-are morally and conceptually equivalent.[85] Significantly, the money laundering statute requires proof of a temporal connection or nexus between the transferred money and some criminal activity, in this case the theft of the jewelry.[86] So the jury was required to determine, when reaching its verdict, whether the "proceeds of criminal activity" came from the alleged theft in order to convict Appellant under a money laundering theory of engaging. In this way, the different predicate offenses are tied together similar to the way the underlying felonies are tied together in the felony murder statute.[87] Moreover, the degree of offense for both theft and money laundering is tied to the same value ladder rendering both offenses first degree felonies.[88] Consequently, the Legislature's decision to treat these predicate offenses as alternate manner and means of committing the same offense did not run afoul of due process.[89]
*395 III. Conclusion
The gravamen of the offense of engaging in organized criminal activity is a circumstance surrounding the conduct, namely the existence or creation of a combination that collaborates in carrying on criminal activities. As such, our Legislature intended that the underlying predicate offenses be treated as alternative manner and means of committing a single offense and the trial court properly instructed the jury in the disjunctive. Further, the jury was not required to agree on which predicate offense was committed as a matter of due process because the two predicate offenses alleged in this case were morally and conceptually equivalent. We affirm the court of appeals decision.
Alcala, J., filed a concurring opinion.
I respectfully concur with this Court's judgment that upholds the conviction for engaging in organized criminal activity against Kelvin Lynn O'Brien, appellant. I do not join this Court's majority opinion because I reach my conclusion through a more direct analysis that avoids discussion of topics neither argued or briefed by the parties nor necessary to the disposition of this case. Examining the plain statutory language as a whole, I conclude that the State may obtain a conviction for engaging in organized criminal activity by alleging alternative predicate offenses as long as those predicate offenses are, as in this case, the same grade felony or misdemeanor offense. Because the plain language of the statute adequately resolves the instant appeal without consideration of extra-textual matters, I respectfully concur with but do not join this Court's majority opinion.
This Court's precedent requires us to permit a conviction for engaging in organized criminal activity[1] based on disjunctive pleadings of alternative predicate offenses. Because the construction used in the instant statute parallels the felony-murder statute[2] that this Court has interpreted as not requiring unanimity as to a predicate felony offense, this Court essentially has already decided that the Legislature did not intend to require jury unanimity as to the predicate offense for engaging in organized criminal activity. In White v. State , this Court held that, "when an indictment alleges multiple felonies in a prosecution under [the felony-murder statute], these specifically named felonies are not elements about which a jury must be unanimous. These felonies constitute the manner or means that make up the 'felony' element of [that statute]." White v. State , 208 S.W.3d 467, 469 (Tex. Crim. App. 2006). The felony-murder statute at issue in White stated,
A person commits an offense if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.
Id. at 467. Under the plain language in the felony-murder statute, the State was required to prove a "felony" offense but not a specific felony offense. Id. at 468 ("[T]he prohibited conduct about which a jury must be unanimous is that the defendant commit a 'felony,' and not one specific felony out of a combination of felonies."). This Court held that, because of that statutory language, the State was permitted to allege various felony offenses in the disjunctive as alternative manner and means *396 that did not have to be unanimously found by a jury. Id. Similarly, here, the instant statute for engaging in organized criminal activity states,
A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following: [enumerated predicate offenses].
See TEX. PENAL CODE § 71.02(a). Thus, like the felony-murder statute's construction of "commits ... a felony," the engaging in organized crime statute includes the phrase "commits ... one or more of the following [offenses]."
For engaging in organized criminal activity, the plain language would obviously require unanimity as to the predicate offense if the State had pleaded only one of the enumerated offenses as the predicate offense of engaging in organized criminal activity. But what if the indictment alleges more than one predicate offense, as here? The pertinent question in this case is the significance of the phrase "or more of the following," as it appears in the engaging in organized criminal activity statute. I agree with the State that this phrase would be rendered meaningless if the State were required to prove each of the alleged predicate offenses with a unanimous verdict. The only logical reading of the plain language of the phrase "or more of the following" is that the Legislature intended to permit the State to prove engaging in organized criminal activity based upon the commission of a predicate offense committed in any of the alternative ways listed in the statute and that the jury did not have to unanimously agree about which of these alternative predicate offenses was committed by a defendant. Accordingly, the enumerated predicate offenses in the statute constitute alternative manner and means by which a defendant can commit the offense of engaging in organized criminal activity. Because jury unanimity is not required as to distinct manner and means, I conclude, therefore, that the plain language of the engaging in organized criminal activity statute clearly permits a conviction based on alternative predicate offenses. See Jefferson v. State , 189 S.W.3d 305, 311-12 (Tex. Crim. App. 2006) ("[W]hen the statute in question establishes different modes or means by which the offense may be committed, [jury] unanimity is generally not required on the alternate modes or means of commission.").
Appellant essentially argues that permitting a conviction for engaging in organized criminal activity without requiring unanimity as to the predicate offense seems "contrary to due process" given the broad range of enumerated predicate offenses (e.g. , gambling to capital murder). There are two flaws with appellant's position. First, as this Court's majority opinion points out, here the two offenses that were pleaded in the alternative were both first-degree felonies involving the unlawful treatment of property-theft and money laundering. Second and perhaps more importantly, appellant fails to consider the statute as a whole, as required by this Court's precedent. See Yazdchi v. State , 428 S.W.3d 831, 837 (Tex. Crim. App. 2014). The punishment range for engaging in organized criminal activity is dependent on the punishment classification of the highest predicate offense found by the jury.[3] Given the plain statutory language *397 prescribing the punishment range for engaging in organized criminal activity, it is clear that the jury must unanimously determine any predicate offenses on which it relies as alternative manner and means if they are not the same grade misdemeanor or felony. Here, the two predicate offenses that the jury was permitted to find in the disjunctive were both first-degree felonies and thus, under the plain language of the statute, appellant would be sentenced to the same punishment range regardless of which predicate offense had been found by the jury. Appellant has made no argument to explain how there could be a due process violation under the circumstances here where the two predicate offenses alleged are both first-degree felonies involving property.[4]
Giving effect to the entire statute, it is apparent that the Legislature did not intend to require jury unanimity as to each alleged predicate offense underlying engaging in organized criminal activity when, as here, all the predicate offenses are the same class of felony or misdemeanor. Because I conclude that the plain language of this statute resolves appellant's arguments and because this Court's precedent in White supports the view that there is no due process violation here, I concur with but do not join this Court's judgment.
YEARY, J., filed a dissenting opinion.
I join Judge Walker's dissenting opinion. For the reasons he expresses, I believe the Court is mistaken to conclude that the predicate offenses that go to establishing guilt for the offense of engaging in organized criminal activity constitute mere manner and means of committing the offense, such that the jury need not agree on which offense (or offenses) the defendant committed. I write further only to add a few brief observations of my own.
First, I am concerned about the double jeopardy implications of the Court's holding today. We have recognized on many occasions "that double-jeopardy and jury-unanimity issues constitute closely intertwined strands of our jurisprudence," Gonzales v. State , 304 S.W.3d 838, 848 & n.37 (Tex. Crim. App. 2010) (citations and internal quotation marks omitted), and the way we resolve one issue typically dictates how we will resolve the other. Consistent with the Court's holding today with respect to the jury-unanimity issue, I would expect it to resolve the double-jeopardy issue, when the time comes, in the following way: Once a defendant has been convicted or acquitted of the offense of organized criminal activity, he may never again be prosecuted for that offense based on any subsequently committed predicate offense as a member of the same combination he was convicted or acquitted of promoting in the first prosecution. In other words, for each combination, the State may pursue only one engaging-in-organized-criminal-activity prosecution, regardless of the number of additional predicate offenses the defendant may have committed (or may yet commit) with the requisite intent to establish, maintain, etc., that combination. I have my doubts that the Legislature contemplated such a limitation.
*398 Second, I respectfully disagree with the Court's assertion that "the question of whether jury unanimity is required ... in cases where the State alleges two predicate offenses of different degree" is not one that is presented in this case, such that resolving it "would be advisory." Majority Opinion at 394-95 n.89. Section 71.02 of the Penal Code plainly provides that the offense "is one category higher than the most serious" predicate offense committed. TEX. PENAL CODE § 71.02(b). I do not see how we can, with any consistency, declare that predicate offenses are mere manner and means when choosing among them does not determine the grade of offense, but that they are elemental when it does . It seems to me that they are either elemental or they are not-period. I see no basis in the language of the statute to draw a distinction. Moreover, I do not see how we can declare that they are anything but elemental when-at least sometimes-they determine the level of the offense. See Calton v. State , 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (a statute that indicates that an offense "is a felony of the third degree if" certain facts are proven has plainly identified those facts as "elements"). And if the predicate offenses are elemental, then jury unanimity is required. See Jourdan v. State , 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) ("Under state law, the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases.") (citing Pizzo v. State , 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) ).
With these supplemental remarks, I join Judge Walker's dissent.
Walker, J., filed a dissenting opinion in which Yeary, J., joined.
The Court's majority opinion today holds that a jury does not need to come to a unanimous decision about whether the predicate offenses for a section 71.02 prosecution were committed. I conclude otherwise, and I respectfully dissent. I also disagree with a conclusion reached by the majority, that Texas's Engaging in Organized Criminal Activity statute, section 71.02, is a "circumstances surrounding the conduct" type of offense.
Section 71.02
The issue in this case is essentially how to construe section 71.02 of the Penal Code, entitled Engaging in Organized Criminal Activity. That statute provides:
(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:
TEX. PENAL CODE Ann. § 71.02(a) (West 2011 & Supp. 2017). The statute then has a large laundry list of offenses. Id. § 71.02(a)(1)-(18). If the person "commits," then the engaging offense is one category higher than the most serious committed offense (e.g., a third degree felony predicate offense leads to a second degree felony section 71.02 offense). Id. § 71.02(b). If the person "conspires," then the engaging offense is the same category as the most serious conspired offense. Id. § 71.02(c). This has the same effect of raising the category of the offense, since conspiracy is normally one category lower than the conspired offense. See id. § 15.02(d).
Section 71.02 is Not a Circumstances Type of Offense
Appellant argues that when there are multiple offenses alleged, the jury must be unanimous in regard to the particular predicate offense. Theft and money laundering were the offenses in this case, so *399 Appellant's position is that the jury had to be unanimous that he committed theft, unanimous that he committed money laundering, or both.
The majority's opinion holds the opposite-that the "commit one or more of the following" is simply the manner and means of committing the offense, and therefore the jury does not need to be unanimous about particular alleged predicate offenses. Instead, the jury simply has to be unanimous that any alleged listed offense was committed. On its way to this conclusion, the opinion holds that section 71.02 is a "circumstances-surrounding-the-conduct" type of offense, where the required circumstance is the existence of a combination.
I disagree with that construction of the statute that the gravamen of the engaging statute is the existence of a combination. I believe that the offense cannot be a circumstances-surrounding-the-conduct offense, with the required circumstance being the existence of a combination, because the statute itself allows for conviction where the intent is to establish a combination (meaning the combination does not exist at the time of the conduct). As I read the statute, it does not matter whether a combination exists at the time of the predicate offense. What matters is the intent of the defendant when he commits the predicate offense. The statute also seems to authorize a conviction even if no combination is ever established, as long as the defendant had the intent to establish, maintain, or participate in one when he committed the predicate offense.
To illustrate how the statute should operate, take for example a defendant who, after watching The Godfather and The Godfather Part II far too many times, has delusions of grandeur as the Don of a Mafia family. Needing funds to establish his criminal empire, he plans and then executes a bank robbery. However, he is arrested before he can do anything with the funds stolen from the bank. The way I read section 71.02, this defendant is subject to prosecution under section 71.02 because he is a person that, with the intent to establish a combination, committed robbery. If section 71.02 was a circumstances-type of offense and requires the existence of a combination, then this defendant is not subject to section 71.02 because there was no combination at the time he robbed the bank, even though he fully intended to create a combination.
The majority opinion's construction of section 71.02 as a circumstances-surrounding-the-conduct type of offense, with the necessary circumstance being the existence of a combination, adds an element to the offense which does not exist. The Legislature could not have intended this result. Indeed, if the offense was truly meant to be a circumstances-surrounding-the-conduct offense, the Legislature would have written it to say: "A person commits an offense if, while establishing, maintaining, or participating in a combination ..., the person commits or conspires to commit one or more of the following ...." This, the Legislature did not do.
The only way to construe section 71.02 is as a "nature of conduct" type of offense. The offense is committing another offense while harboring a particular intent. The defendant, committing one of the listed offenses, must specifically intend to establish, maintain, or participate in a combination, the combination's profits, or as a member of a criminal street gang.
Unanimity is Required as to Section 71.02 Predicate Offenses
On top of my disagreement with the majority's premise that the offense is of the circumstances-surrounding-the-conduct type, I also disagree with the ultimate *400 conclusion that the jury need not be unanimous as to the predicate offense.
I believe the statute simply upgrades the predicate offense if a specific intent to establish, maintain, or participate in a combination is found. The "offense" of violating section 71.02 is similar to an enhancement of the predicate offense instead of being a distinct offense. But instead of increasing the range of punishment for committing a listed offense like the usual enhancement statutes,[1] it raises the degree of that offense because of the defendant's intent.
The most natural way to read the statute is to follow the statute, that:
A person commits an offense if:
(1) with the intent to establish, maintain, or participate in a combination
(2) he commits or conspires to commit one (or more) of the listed offenses
Stated thusly, it is apparent that there are really only two elements of the offense, namely:
(1) Specific Intent + (2) Predicate Offense.
Under the majority's reading of the statute, the predicate offense is mere manner and means. I disagree. Justice Scalia's concurring opinion in Schad helps illustrate the problem:
As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree on the mode of commission. That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her. While that seems perfectly obvious, it is also true, as the plurality points out, that one can conceive of novel "umbrella" crimes (a felony consisting of either robbery or failure to file a tax return) where permitting a 6-to-6 verdict would seem contrary to due process.
Schad v. Arizona , 501 U.S. 624, 649-50, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (Scalia, J., concurring) (citations omitted). What the plurality pointed out was that "nothing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." Id. at 633, 111 S.Ct. 2491 (plurality op.).
I think our "Engaging" statute is one of those "umbrella" crimes described by Justice Scalia or a generic "Crime" as described by the Schad plurality. It covers everything from murder to misdemeanor gambling to a Tax Code felony, so long as those offenses are committed with the specific intent to establish, maintain, or participate in a combination. Permitting a non-unanimous verdict may run into due process problems if the separate predicates are dissimilar like Justice Scalia's robbery and failure to file a tax return examples. The majority's holding, that the jury does not need to be unanimous regarding the particular predicate offenses, is not supportable as a general, blanket proposition.
However, as the burning and killing example illustrates, there are times when the *401 separate theories are not so separate, and the jury not coming to a unanimous agreement would not necessarily be a problem. Sticking with the example, if half of the jury found beyond a reasonable doubt that the defendant killed his victim and then burned the victim's body, and half of the jury found beyond a reasonable doubt that the defendant killed the victim by burning her, the jury is nevertheless unanimous on the ultimate matter that the defendant killed the victim. However, Schad , in which Justice Scalia gave the examples, was a first degree murder case. Id. at 628, 111 S.Ct. 2491. The theories of murder were both premeditated murder and felony murder, and the issue was whether the jury had to be unanimous as to the theory. Id. at 630, 111 S.Ct. 2491. The statute in this case is not like murder-it is an "umbrella" offense which acts like an enhancement based on why the offense was committed.
Additionally, even though the majority already holds that the jury does not need to be unanimous as to the predicate offenses, it nevertheless engages in Schad analysis to reach the holding that the theft and money laundering in this case are both morally and conceptually equivalent. The majority's analysis in this regard is hedging its bets: in case it is wrong about whether the predicate offenses need unanimous verdicts as a general rule of law, at least the predicates in this case do not. As far as the actual analysis about why the offenses are morally and conceptually equivalent, I am unsure if the majority's reasoning is sound. Essentially, the reasoning is: (1) the offenses are connected because the money laundering is laundering the proceeds of the theft; (2) they are both first degree felonies in this case. This is nowhere near the same as the kill-and-burn/burn-and-kill example given by Justice Scalia.
I also pause to consider the possible implications of a non-unanimous jury when the trial moves to the punishment phase. Suppose, for example, a defendant is charged under section 71.02 based on predicate offenses of second degree felony aggravated assault and Class A misdemeanor offering a gift to a public servant under section 36.09. If the jury does not need to be unanimous as to the predicate offense, the defendant could be found guilty beyond a reasonable doubt by eleven of the jurors as to the misdemeanor, while one juror could have found him guilty beyond a reasonable doubt as to the second degree felony. Under section 71.02(b), the grade of the defendant's engaging offense is one greater than the most serious offense that was committed, which would mean his engaging offense is a first degree felony if the verdict in which only one juror believed he was guilty of aggravated assault equates to a finding that the offense of aggravated assault was committed. At punishment, then, the jury would be limited to considering a first degree felony punishment range of five to ninety-nine years, or life, even though eleven of those jurors found that the defendant committed what would have been a Class A misdemeanor normally subject to a year in the county jail.
Another reason the majority's conclusion is problematic is that it would also have the effect of indirectly abrogating Ngo v. State , 175 S.W.3d 738 (Tex. Crim. App. 2005). In Ngo , the defendant was charged with credit card abuse under three statutorily different criminal acts: (1) stealing a credit card; (2) receiving a credit card, knowing that it had been stolen, and acting with the intent to use it; (3) presenting a credit card with the intent to obtain a benefit fraudulently, knowing the use was without the effective consent of the cardholder. Id. at 744. The jury was given a general instruction that it must be unanimous *402 in finding the defendant guilty of the general offense of credit card abuse, instead of being instructed that it must be unanimous on at least one of the three separate acts. Id. at 745. We held that this was error and the jury must have been told that it needed to be unanimous on at least one of the three alleged acts. Id.
Credit card abuse is covered by Penal Code section 32.31, in Chapter 32 of the Penal Code. TEX. PENAL CODE Ann. § 32.31 (West 2016 & Supp. 2017). Chapter 32 felonies are part of the laundry list under section 71.02. TEX. PENAL CODE Ann. § 71.02(a)(8) (West 2011 & Supp. 2017). If multiple theories of credit card abuse under section 32.31 are the predicate offenses for a section 71.02 engaging in criminal activity case, the majority position arguably would allow a non-unanimous verdict about which of those acts of credit card abuse were committed, even though we held the opposite in Ngo .
Thus, in regard to the heart of the issue-whether the jury must be unanimous that the particular predicate offense was committed, or whether the jury simply must be unanimous that "one or more of the following" listed offenses was committed-I conclude that the jury must be unanimous that the particular predicate offense was committed. Therefore, in this case there was error because the jury instructions allowed for a non-unanimous verdict.
Conclusion
In conclusion, I do not join the majority's opinion because I disagree that the offense is a circumstances-surrounding-the-conduct type of offense. Additionally, I would hold that, for the purposes of section 71.02, the jury needs to be unanimous about which predicate offense was committed. I would reverse the court of appeals and remand to that court for a harm analysis under Almanza v. State , 686 S.W.2d 157 (Tex. Crim. App. 1984). Because the Court does not do so, I respectfully dissent.

Tex. Penal Code § 71.02.

O'Brien v. State , 482 S.W.3d 593, 606 (Tex. App.-Houston [1st Dist.] 2015).

Tex. Penal Code § 71.01(a) (" 'Combination' means three or more persons who collaborate in carrying on criminal activities[.]").

Tex. Penal Code § 71.02(a)(1) & (a)(10).

Because Appellant's brother, John, and John's wife Derenda share Appellant's last name, we refer to their first names to avoid confusion.

O'Brien , 482 S.W.3d at 605.

Id.

Id.case-ids="6820325" index="31" url="https://cite.case.law/sw3d/482/593/#p606"> at 608.

Landrian v. State , 268 S.W.3d 532, 535 (Tex. Crim. App. 2008).

Stuhler v. State , 218 S.W.3d 706, 716 (Tex. Crim. App. 2007) ; Ngo v. State , 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).

Ngo , 175 S.W.3d at 747.

Jourdan v. State , 428 S.W.3d 86, 94 (Tex. Crim. App. 2014).

Jefferson v. State , 189 S.W.3d 305, 311-12 (Tex. Crim. App. 2006) (quoting State v. Johnson , 243 Wis.2d 365, 627 N.W.2d 455, 459-60 (2001) ). We have noted that our Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed. Landrian , 268 S.W.3d at 535. That discretion is limited only by the Due Process Clause of the federal constitution and the Due Course of Law provision of the Texas Constitution. Id. (citing Schad v. Arizona , 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ).

Id.

Huffman v. State , 267 S.W.3d 902, 907 (Tex. Crim. App. 2008) (noting that the common thread through all jury unanimity cases seems to be determining the "focus" or "gravamen" of the offense). Both Appellant and the State acknowledge that we must look to the gravamen or focus of the offense to determine whether the predicate offenses are essential elements of the offense of engaging in organized criminal activity. (Appellant's brief at 11) ("This Court looks to the essential elements or the gravamen or focus of the offense."); (State's brief at 26) ("Thus, the legislature intended that the gravamen of the organized crime offense would be something other than the gravamen of the 'one or more' predicate offenses.").

Young v. State , 341 S.W.3d 417, 424 (Tex. Crim. App. 2011) ; see, e.g., Stuhler , 218 S.W.3d at 718 (holding that jury unanimity was required in injury to a child case on the issue of the type of injury caused because injury to a child is a "result of conduct" offense).

Young , 341 S.W.3d at 424 ; see, e.g., Pizzo v. State , 235 S.W.3d 711, 717 (Tex. Crim. App. 2007) (holding that indecency with a child is a "nature of conduct" offense so a jury must be unanimous about the specific conduct committed).

Young , 341 S.W.3d at 424 ; see, e.g., Huffman , 267 S.W.3d at 907-08 (holding that jury unanimity is required regarding the circumstances of a traffic accident and a victim suffering an injury in a case involving the failure to stop and render aid).

Jefferson , 189 S.W.3d at 312 (quoting Johnson , 627 N.W.2d at 459-60 ).

Richardson v. United States , 526 U.S. 813, 820, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ; Contreras v. State , 312 S.W.3d 566, 584-85 (Tex. Crim. App. 2010).

501 U.S. 624, 643, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality op.).

189 S.W.3d at 313-14 (citing Schad , 501 U.S. at 643, 111 S.Ct. 2491 ). Appellant relies upon Schad to argue that treating the predicate offenses in this case as alternate manner and means violates due process. (Appellant's brief at 14).

The State charged Appellant with engaging in organized criminal activity with the "intent to establish, maintain, or participate in a combination." We express no opinion regarding the gravamen of the offense of engaging in organized criminal activity committed "as a member of a criminal street gang."

Pizzo , 235 S.W.3d at 714.

Id. ; Cooper v. State , 430 S.W.3d 426, 429 (Tex. Crim. App. 2014) (Keller, P.J., concurring) (" ... the best indicator of legislative intent with respect to the unit of prosecution is generally the focus or gravamen of the offense.").

O'Brien , 482 S.W.3d at 607 (quoting Leza v. State , 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) ).

Clinton v. State , 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

Nguyen v. State , 359 S.W.3d 636, 642 (Tex. Crim. App. 2012) (quoting Boykin v. State , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ).

See, e.g., Tapps v. State , 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

See, e.g., Ex parte Perry , 483 S.W.3d 884, 903 (Tex. Crim. App. 2016).

See, e.g., Bryant v. State , 391 S.W.3d 86, 92 (Tex. Crim. App. 2012).

Tex. Pen. Code § 71.02.

Tex. Penal Code § 71.01(a).

See Price v. State , 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) ("In a jury charge, the language in regard to the culpable mental state must be tailored to the conduct elements of the offense.").

Leza , 351 S.W.3d at 357.

Jefferson , 189 S.W.3d at 315-16 (Cochran, J., concurring).

O'Brien , 482 S.W.3d at 607 ("The indictment states that Kelvin committed the enumerated offense of theft 'by acquiring and otherwise exercising control over property ... owned by' Karat 22 and the enumerated offense of money laundering 'by purchasing a house, by purchasing a pool, by purchasing motor vehicles,' etc."). The application paragraph of the jury charge adopts this construction.

Jefferson , 189 S.W.3d at 314 (Cochran, J., concurring).

218 S.W.3d at 718-19.

Pizzo , 235 S.W.3d at 714 (noting that an offense is a result-oriented crime if the main verb requires a direct object).

Cf. Pizzo , 235 S.W.3d at 717 (noting that definition of "sexual conduct" criminalizes only three specific types of acts).

208 S.W.3d 467 (Tex. Crim. App. 2006).

Id. at 468.

See, e.g., O'Brien , 482 S.W.3d at 608 (noting that Section 71.02 uses the same transitive verb "commits" as section 19.02(b)(3) ).

For example, felony murder can be based upon the underlying felony of aggravated assault, which can be a result-oriented offense. Lawson v. State , 64 S.W.3d 396, 396-97 (Tex. Crim. App. 2001) (holding that intentional and knowing aggravated assault can serve as the predicate felony for felony murder); see also Landrian , 268 S.W.3d at 537 (noting that aggravated assault is a result-oriented offense). But it can also be based upon the offense of felony DWI which is not. Lomax v. State , 233 S.W.3d 302, 309 (Tex. Crim. App. 2007) (holding that felony DWI can serve as the predicate offense for felony murder); see also Ex parte Benson , 459 S.W.3d 67, 81 (Tex. Crim. App. 2015) (noting that the gravamen of the offense of felony DWI is either a conduct-oriented offense or a circumstances-oriented offense). The dissent argues that treating the offense of engaging as a circumstance-oriented crime would abrogate Ngo v. State , because it would treat credit-card-abuse as a circumstance-oriented crime rather than a conduct-oriented crime. But the dissent's interpretation is vulnerable to the same criticism. Treating engaging as a conduct-oriented crime, as the dissent argues, would have the effect of treating result-oriented predicate offenses as conduct-oriented offenses. Using the dissent's logic, this would abrogate precedent such as Landrian, for example, which holds that jury unanimity is not required regarding the different manner and means of committing a result-oriented offense. 268 S.W.3d at 541-42. Ultimately, this cautions us against treating engaging in organized criminal activity as either a conduct-oriented crime or a result-oriented crime.

The concurring opinion would go further and interpret Section 71.02(b) as requiring jury unanimity where predicate offenses are not of the same degree. But the concurring opinion offers no support for the position that the text of Article 71.02(b) requires jury unanimity with respect to some predicate offenses but not others except to state that its conclusion is "clear." Conversely, both Judges Yeary and Walker argue in their dissents that if Section 71.02(b) requires jury unanimity with regard to predicate offense of the same degree, then they must require jury unanimity with regard to all predicate offenses regardless of degree. Ultimately, as discussed above, we determine that the text Section 71.02(b) does not indicate a legislative intent to treat each predicate offense as elemental, regardless of whether the State alleges alternate predicate offenses with different degrees.

We previously characterized Section 71.02 as a "nature of the conduct" offense in Clayton v. State , 652 S.W.2d 950, 955 (Tex. Crim. App. 1983). But there are many reasons to discount this previous conclusion. First, it is not clear from Clayton what the defendant was arguing. We noted that he raised a "patently multifarious" complaint that we could have rejected his argument on that basis. Id. Second, the analysis itself is circumspect-consisting of one conclusory sentence-and pre-dates the more robust analysis used for determining the focus or gravamen of the offense in our more recent cases. There is no attempt to discern the legislative intent either through the statute's text or resort to extra-textual sources. Finally, we have never relied upon Clayton for the proposition that engaging in organized criminal activity is a nature-oriented offense. Neither have any other courts. This is not surprising given the ambiguity surrounding the claims raised in the case and the underdeveloped analysis in that regard. We follow the doctrine of stare decisis to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process. See Paulson v. State , 28 S.W.3d 570, 571 (Tex. Crim. App. 2000). But adhering to this aspect of Clayton would not achieve any of those goals, so we decline to follow it here. Id. at 572.

Tex. Penal Code § 19.02(b)(3).

Contreras , 312 S.W.3d at 585.

Nguyen v. State , 1 S.W.3d 694, 695-96 (Tex. Crim. App. 1999).

Id. at 696.

Id.

Id.

Id.case-ids="11502184" index="101" url="https://cite.case.law/sw3d/1/694/#p695"> at 697.

Id.

Though we resolve the issue based upon the plain text of the statute without resort to extra-textual sources, it is worth noting that our reading of the plain text is consistent with the legislative history behind the statute as well. The proponents of the bill argued that the statute was intended to make it less difficult for law enforcement officials and criminal justice agencies to obtain convictions for participation in organized crime and to enhance convictions in such areas as dope rings, or car theft rings, which may stretch across several counties, and employ a number of persons operating in coordination with one another but may not know one another's identity. House Study Group, Bill Analysis, Tex. S.B. 151, 65th Leg., R.S. (1977).

Kent v. State , 483 S.W.3d 557, 561 (Tex. Crim. App. 2016).

Id.

Id. at 562.

Id.case-ids="6811974" index="106" url="https://cite.case.law/sw3d/483/557/#p561"> at 561.

Id. Notably, Section 31.09 operates to determine the degree of offense in the same way that Section 71.02 does. Though a common scheme of theft may include individual misdemeanor and felony thefts, the degree of offense is elevated to at least the highest degree of the individual thefts committed even though the jury does not need to be unanimous regarding each individual theft. Id. In his dissent, Judge Yeary argues that treating predicate offenses as alternate manner and means in an engaging in organized criminal activity case may raise double jeopardy issues. Similar concerns could have been raised in Kent v. State , but they were not. Reaching those concerns in this case would be advisory.

Nguyen , 1 S.W.3d at 697.

Ex parte Chaddock , 369 S.W.3d 880, 889 (Tex. Crim. App. 2012) (Cochran, J., concurring) ("The gravamen of the organized-crime offense is the additional harm and danger to the public of having the members of a criminal organization working together to commit crimes on an ongoing basis.").

Renteria v. State , 199 S.W.3d 499, 507 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd).

Id.

Id.

Id. at 508.

The First Court of Appeals relied upon its earlier case of Renfro v. State when deciding Renteria . See Renteria , 199 S.W.3d at 508 (discussing Renfro v. State , 827 S.W.2d 532, 535-36 (Tex. App.-Houston [1st Dist.] 1992, pet. ref'd) ). In Renfro , the State also charged the defendant with multiple different types of theft, namely theft of vehicles, heavy equipment, and money. Renfro , 827 S.W.2d at 535-36. However, the court of appeals held that the State had simply charged the defendant with one offense of engaging in organized criminal activity and that the different types of theft were simply different manner and means of committing the single offense of engaging. Id. at 536.

1 S.W.3d at 696.

Id. ("The plural object, 'activities,' implies that the combination seeks to do more than one thing. If the Legislature intended the meaning that the State advances, the natural language should have been, 'collaborate in committing a criminal act,' or the like.").

See, e.g., Bogany v. State , 54 S.W.3d 461, 463 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) (when indictment for engaging in organized criminal activity by conspiracy alleges "various overt acts" these are alternate means of committing the offense of engaging in organized criminal activity) (citing Garcia v. State , 46 S.W.3d 323, 327 (Tex. App.-Austin 2001, pet. ref'd) ).

See State v. Duke , 865 S.W.2d 466, 468 (Tex. Crim. App. 1993) (holding that State was not required to allege the specific overt act when charging a defendant with engaging by commission rather than conspiracy). In the past, we have even gone so far to characterize the verbs "commit" and "conspire to commit" as the two "means" associated with engaging in organized criminal activity. McIntosh v. State , 52 S.W.3d 196, 199 (Tex. Crim. App. 2001). There we held that the State can rely upon party liability to establish the completion of the underlying predicate offense even though one of the two "means" of establishing the offense includes a conspiracy to commit the predicate offense. Id. at 201.

O'Brien , 482 S.W.3d at 605 ("Theft and money laundering are two of these enumerated offenses (sometimes also referred to as 'overt acts')").

Garcia , 46 S.W.3d at 327 ("The critical element of a criminal conspiracy is the agreement among the conspirators to commit the criminal offense.") (citing Williams v. State , 646 S.W.2d 221, 223-24 (Tex. Crim. App. 1983) ).

Nguyen , 1 S.W.3d at 695-96.

McIntosh , 52 S.W.3d at 201 (noting that under engaging-by-conspiracy, a party is liable for the agreement to commit the offense, while under engaging-by-commission, a party is liable for the completed offense).

See, e.g., Brown v. State , 576 S.W.2d 36, 41 (Tex. Crim. App. 1978) (noting that all the elements of a completed offense need not be proven in a conspiracy case).

Nguyen , 1 S.W.3d at 695-96.

According to Appellant, the engaging statute is "a novel umbrella crime consisting of distinct enumerated offenses, whereby permitting a 6-to-6 verdict for the offenses of theft and money laundering 'would seem contrary to due process.' " (Appellant's brief at 14).

Jefferson , 189 S.W.3d at 313.

312 S.W.3d at 585 ("A holding that no due process violation occurred because the underlying felonies were morally and conceptually equivalent is not the same as holding that due process requires the underlying felonies to be morally and conceptually equivalent.").

Id. at 584 (citing Schad , 501 U.S. at 650, 111 S.Ct. 2491 (1991) (Scalia, J., concurring) ).

Id. at 584-85.

Id. at 585 ("That concern is not present in felony murder cases. Justice Scalia discussed a situation in which an umbrella crime would contain wholly unrelated primary theories of liability. In contrast, an offense such as felony murder contains alternate underlying offenses that share a common nexus: all underlying felonies are related to dangerous conduct that cause the death of an individual.").

We reached a similar conclusion with regard to the predicate felonies in White , 208 S.W.3d at 469 ("We further decide that dispensing with jury unanimity on the felonies alleged in this case does not violate due process because these felonies are 'basically morally and conceptually equivalent.' ").

Tex. Penal Code § 34.02(a)(1) ; see also Deschenes v. State , 253 S.W.3d 374, 381 (Tex. App.-Amarillo 2008, pet. ref'd) ("In order for a conviction for money laundering under § 34.02(a)(1) to be upheld, there must be direct or circumstantial evidence of a temporal connection, or nexus, between the money and some criminal activity."). Arguably, the State could have even chosen to charge Appellant with theft of money rather than money laundering, making this case conceptually identical to the different thefts at issue in Renteria . This would further suggest that the underlying brute facts of the two alleged predicate offenses were morally and conceptually equivalent.

Contreras , 312 S.W.3d at 585 (noting that the underlying offenses in felony murder all share a common nexus, that they are all related to dangerous conduct that causes the death of an individual).

Compare Tex. Penal Code § 31.03(e)(7) (listing theft as a first degree felony if the value of the property stolen is $300,000 or more) with Tex. Penal Code § 34.02(e)(4) listing money laundering as a first degree if the value of the funds is $300,000 or more); see also White , 208 S.W.3d at 469 (holding that the state-jail-offenses of unauthorized use of a motor vehicle and evading arrest or detention in a vehicle were morally and conceptually equivalent).

Significantly, this case does not involve predicate offenses of different degrees. And, while we have determined that the text of the statute indicates a legislative intent to treat the underlying predicate offenses as alternate manner and means, there may be due process limits to treating predicate offenses of differing degrees that way. We leave open the question of whether jury unanimity is required by due process in cases where the State alleges two predicate offenses of different degree. Reaching that conclusion in this case would be advisory.

See Tex. Penal Code § 71.02.

See Tex. Penal Code § 19.02(b)(3).

Tex. Penal Code § 71.02(b). Subsection (b) provides, "Except as provided in Subsections (c) and (d), an offense under this section is one category higher than the most serious offense listed in Subsection (a) that was committed, and if the most serious offense is a Class A misdemeanor, the offense is a state jail felony, except that the offense is a felony of the first degree punishable by imprisonment in the Texas Department of Criminal Justice" under specified circumstances.

I do not foreclose the possibility that there could be a due process violation for offenses of the same grade that are wholly incomparable, such as murder and first-degree theft. But any discussion of that type of situation would be advisory given that this case involves only property-type offenses that are felonies of the same grade.

See Tex. Penal Code Ann. §§ 12.42, 12.425, 12.47 (West 2011 & Supp. 2017).