**Opinion issued March 31, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00559-CR

————————————

**BRISBY RAY BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1802317**

## MEMORANDUM OPINION

A jury convicted Brisby Ray Brown of the second-degree felony offense of

aggravated assault with a deadly weapon and sentenced him to eight years'

imprisonment.[1] In a single issue on appeal, Brown contends that the jury charge

---

[1]     *See* TEX. PENAL CODE § 22.02(a)(2), (b).

contained reversible error because it permitted a non-unanimous verdict on two separate charges of aggravated assault, and the unpreserved error caused him egregious harm. We affirm.

**Background**

The complainant Calvin Ray Stone testified at trial that he and his wife live in Houston, and Brown and Brown's mother previously lived across the street. Brown's mother moved away a few years before the incident, but Stone would see Brown return to her house on occasion. Shortly before the incident, Stone saw Brown across the street at the house and called the police "[b]ecause the house had been vandalized."

The incident occurred around 3:00 p.m. on October 29, 2022. Stone was home alone washing dishes when he "heard a loud boom" on his front door. The front door exits to a small enclosed porch with a screen door. Stone approached the front door and saw Brown kicking it and yelling ambiguous obscenities. Brown later told police that he banged on Stone's door to remind Stone who he is and to warn Stone not to call the police again. Stone and Brown were the only two witnesses to the incident. Brown did not testify at trial, although there was some testimony about his statements during a custodial interrogation.

The incident lasted only a few minutes. In relevant part, Stone testified about the incident as follows:

2

- Stone heard someone banging on his front door, approached it, and saw Brown kicking the door and yelling ambiguous obscenities. Stone braced his body against the locked door, but Brown kicked the door in, causing it to hit Stone in the face and injure his mouth.

- Brown retreated, grabbed a gasoline can from the front lawn, and began "sprinkling gas" around the front porch. Stone was scared that Brown would light the gasoline, but there was no evidence he did so or even had an ignition source.

- After pouring the gasoline, Brown walked towards the mailbox at the street. As he retreated, Stone went inside, found his wife's handgun in the bedroom, and returned to the porch. Brown was near the mailbox when Stone fired a warning shot "to let him know [Stone] had a gun," but Stone intentionally missed Brown.

- Brown then pulled the metal mailbox and attached post out of the ground, returned to the porch, and threw the mailbox and post at Stone. The metal mailbox hit Stone in the mouth and injured him, so he shot Brown one time in the chest or stomach area.

- Brown could walk despite the gunshot wound. He retreated to the front yard, picked up a metal barbecue lid, returned to the porch, and threw the lid at Stone. The lid hit Stone in the arm as he blocked it. He then shot Brown in the chest or stomach area a second time.

- Brown continued to advance, so Stone shot him a third time, and he collapsed on the porch steps. Stone called 911, and law enforcement and EMS arrived about 10 minutes later.[2]

One of the first responding officers and the investigating detective testified that Brown was taken to the hospital, and he survived his gunshot wounds. Police collected evidence and photographed the area around the porch. The trial court admitted photographs at trial depicting Stone's mouth injury; the front door broken

---

[2] The record does not indicate that Stone was charged with any offense for shooting Brown.

off its hinges; the mailbox post lying on the porch; the porch steps under a pool of blood and the barbecue lid; and the driveway with casings and blood.

Brown was charged with aggravated assault based on causing Stone bodily injury and threatening Stone with imminent bodily injury. As we discuss below, these are two separate aggravated assault offenses requiring jury unanimity. The indictment also contained enhancement paragraphs alleging that Brown had previously been finally convicted of two other felony offenses—which qualified him for an enhanced minimum sentence of twenty-five years' confinement—but the State did not attempt to prove the enhancement allegations at trial. *See* TEX. PENAL CODE § 12.42(d).

During trial, Brown's defense was to question Stone's credibility and the police investigation and then to suggest that Stone had actually shot Brown unprovoked and attempted to cover with the assault allegations. Among other things, counsel cross-examined the three witnesses—Stone, a responding officer, and the investigating detective—extensively about the scene when they arrived; the extent of Brown's injuries; inadequacies in the police investigation; whether Brown poured gasoline around the porch, and why officers did not smell gasoline when they arrived a few minutes afterwards; and why casings were found several feet from where Stone claimed he was standing when he fired the four shots.

4

Consistent with the indictment, the jury charge instructed the jury on both aggravated assault offenses—based on (1) underlying assault by causing bodily injury and (2) underlying assault by threatening with imminent bodily injury. The charge also contained four application paragraphs disjunctively listing both offenses based on different manners and means of committing the offenses. Thus, the charge instructed the jury to convict Brown of aggravated assault if it found beyond a reasonable doubt that he:

- caused bodily injury to Stone with a deadly weapon—the mailbox or the barbecue lid;
- threatened imminent injury to Stone with a deadly weapon—gasoline;
- threatened imminent injury to Stone with a deadly weapon—the mailbox; or
- threatened imminent injury to Stone with a deadly weapon—the barbecue lid.

The charge concluded by instructing: "Your verdict must be by a unanimous vote of all members of the jury."

At the charge conference, defense counsel lodged numerous objections to the court's proposed charge, but none concerned the jury unanimity issue raised on appeal. *See* TEX. R. APP. P. 33.1(a) (generally requiring that, as prerequisite to presenting complaint for appellate review, record shows complaint was timely presented to trial court and complaining party obtained ruling). Brown did not object to the final charge. *See id.*

5

During closing arguments, the State argued to the jury that its verdict would be unanimous even if jury members disagreed about whether Brown committed aggravated assault by causing bodily injury or aggravated assault by threat. The jury returned a verdict of guilty as to aggravated assault, and sentenced Brown to eight years' confinement.

This appeal followed.

## Jury Unanimity

In his sole appellate issue, Brown contends that the jury charge erroneously permitted a non-unanimous verdict on two separate offenses of aggravated assault, and this error caused him egregious harm by depriving him of the valuable right to a unanimous verdict.

### A. Standard of Review and Governing Law

The trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. Jury instructions inform the jury of the applicable law and how to apply it to the facts adduced at trial. *Alcoser v. State*, 663 S.W.3d 160, 164–65 (Tex. Crim. App. 2022). A defendant is entitled to be convicted upon a correct statement of the law. *Hutch v. State*, 922 S.W.2d 166, 174 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703, 704 (Tex. Crim. App. 2013).

Appellate courts analyze claims of jury charge error in two steps under the *Almanza* framework. *See Alcoser*, 663 S.W.3d at 165 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). First, we determine whether the charge contained error, regardless of whether the error was preserved. *Id.* If error exists, we then determine whether the error harmed the defendant. *Id.*

Where, as here, the defendant did not object to the alleged jury charge error in the trial court, the defendant must demonstrate on appeal that any error caused "egregious harm" to obtain relief.[3] *Id.* (quotation omitted). To assess harm, we consider (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information in the record as a whole. *Id.* (quotation omitted).

A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.* (quotation omitted). Egregious harm is a difficult standard to meet, and the analysis is fact-specific. *Id.* Jury charge error causes egregious harm if it affects the very basis of the case, deprives the accused of a valuable right, or

---

[3] By contrast, a defendant who preserved error must demonstrate that the error caused "some harm" to obtain relief. *Alkayyali v. State*, 713 S.W.3d 780, 789 (Tex. Crim. App. 2025) ("Some harm requires reversal if the error is calculated to injure the rights of the defendant, meaning the error cannot be harmless.") (quotation omitted).

vitally affects a defensive theory. *Id.* Neither party has the burden to show egregious harm. *Id.*

**B.     The Charge Contained Error**

The State does not dispute that the jury charge was erroneous under the first step of our analysis. *See id.* Nor could it considering binding precedent from the Court of Criminal Appeals. *See Landrian v. State*, 268 S.W.3d 532 (Tex. Crim. App. 2008).

"Both Texas and federal courts have held that the jury must be unanimous in finding that the defendant committed a specific statutory crime." *Id.* at 536. That is, the jury "must agree that the defendant committed one specific crime." *Id.* at 535. But while "the jury must unanimously agree about the occurrence of a single criminal offense," it "need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011). Determining "what the jury must be unanimous about" requires "conducting a statutory analysis that seeks to ascertain the focus or gravamen of the offense." *O'Brien v. State*, 544 S.W.3d 376, 383 (Tex. Crim. App. 2018). For example, a results-oriented offense requires unanimity about the specific result required by the statute but not the specific conduct, while a conduct-oriented offense requires unanimity about the specific criminal act committed. *Id.*

The Court of Criminal Appeals has held that the "gravamen" of an aggravated assault offense "is the specific type of assault defined in Section 22.01." *Landrian*, 268 S.W.3d at 537; *see* TEX. PENAL CODE § 22.02(a) (defining aggravated assault as assault under section 22.01 plus aggravating circumstance, such as use or exhibition of deadly weapon while committing assault). Thus, "aggravated assault under each distinct assaultive crime is a separate crime: aggravated assault with the underlying crime of assault by causing bodily injury" is a separate offense from "aggravated assault with the underlying crime of assault by threat." *Landrian*, 268 S.W.3d at 540 (stating that former offense is results-oriented, while latter is conduct-oriented).

Here, it is undisputed that Brown was charged with aggravated assault based on two underlying assaultive offenses: causing bodily injury to Stone *and* threatening Stone with imminent bodily injury. *See* TEX. PENAL CODE §§ 22.02(a)(2) (aggravated assault with deadly weapon), 22.01(a)(1)–(2) (assault by causing bodily injury and by threatening another with imminent bodily injury). The charge then set out four application paragraphs authorizing the jury to convict Brown if the jury found beyond a reasonable doubt that he, with the requisite culpability and with a deadly weapon:

- caused bodily injury with either a metal mailbox or a metal barbecue lid; *or*

- threatened Stone with imminent bodily injury with gasoline; *or*

- threatened Stone with imminent bodily injury with a mailbox; *or*

- threatened Stone with imminent bodily injury with a barbecue lid.[4]

The charge concluded: "Your verdict must be by a unanimous vote of all members of the jury."

We agree with the parties that the charge did not require unanimity on each of the two separate aggravated assault offenses. Although the charge required a unanimous verdict, it did not indicate that there were two separate aggravated assault offenses and that the jury must unanimously convict on each offense. *See Ngo v. State*, 175 S.W.3d 738, 749 (Tex. Crim. App. 2005) ("The error is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed."). Therefore, we conclude that the charge contained error.

## C.     The Error Did Not Cause Egregious Harm

Considering the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant record information, as we must, we cannot conclude that the error caused egregious harm. *See Alcoser*, 663 S.W.3d at 165.

### 1.     Entire Jury Charge

As discussed above, the jury charge did not instruct the jury that it must be unanimous on either of the two charged aggravated assault offenses: aggravated assault based on assault by causing bodily injury or aggravated assault based on

---

[4]     Each item was described as a deadly weapon.

assault by threat. The charge instructed the jury that its "verdict must be by a unanimous vote of all members of the jury." Nothing in the charge instructed that to convict Brown, the jury was required to unanimously agree on one aggravated assault offense.

Nevertheless, while the charge permitted a non-unanimous verdict, it did not require it. Nothing on the face of the record indicates that the verdict actually resulted from a split vote between the two aggravated assault offenses. *See id.* (stating that egregious harm must be based on actual harm, not theoretical harm). At best, the charge evinces theoretical harm rather than actual harm because it permitted a non-unanimous vote but does not show an actual non-unanimous vote. Thus, the face of the charge weighs against finding egregious harm.

### 2.    State of the Evidence

We also consider the state of the evidence, including the contested issues and the weight of the probative evidence. *See id.*

The trial testimony and evidence focused on whether Brown caused bodily injury to Stone, albeit by different manners and means. *See Young*, 341 S.W.3d at 422 (stating that jury must unanimously agree that single criminal offense occurred, but it "need not be unanimous about the specific manner and means of how that offense was committed"). For example, Stone testified that Brown kicked in his front door and injured Stone's lip when the door hit it; Brown then went and retrieved

11

Stone's mailbox and threw it at Stone injuring his mouth or lip; and Brown threw a barbecue lid at Stone injuring Stone's arm when he raised his arms to block it. Two officers confirmed that they saw injuries on Stone's mouth and arm when they talked to him after the incident, and they generally believed Stone's version of the incident and disbelieved Brown's version given during a custodial interview. The trial court also admitted a photograph showing lacerations on Stone's mouth.

Defense counsel cross-examined these witnesses about photographs showing the placement of the mailbox and the barbecue lid shortly after the incident, as well as the injury to Stone's mouth. Counsel later relied on some inconsistencies in the evidence to argue that Stone had fabricated the allegations because he shot Brown as soon as he entered the property. The evidence about whether Brown caused Stone bodily injury consumed most of the trial.

By contrast, the evidence of a threat was comparatively minor. As an initial matter, Stone's trial testimony does not mention the word "threat" or a variation, such as he felt threatened by a certain action. Stone did, however, testify that he felt scared during the incident. For example, he felt "[v]ery scared" when he saw Brown pouring gasoline around the front porch. He also believed Brown "was going to hurt [him] with it [the mailbox]" when Brown threw the mailbox at him. This testimony

12

is perhaps some evidence that Brown threatened Stone with imminent bodily injury.[5]

But even so, most of the evidence showing that Stone perceived a threat—particularly from the mailbox and the barbecue lid—concerns that perception as Brown threw various items at Stone and actually caused bodily injury (rather than merely threatening to do so).

Threats from pouring the gasoline are different, however. Stone testified that after Brown kicked in the front door, he retreated, grabbed a gasoline can in the front yard, and began "sprinkling gas" around the front porch. Stone was "[v]ery scared" when he saw this, but there was no evidence Brown had an ignition source or otherwise attempted to ignite the gasoline. Nor was there evidence that the gasoline injured Stone. Thus, this is really the only evidence of a threat to cause imminent bodily injury. Defense counsel cross-examined the witnesses in detail about the gasoline allegation and obtained inconsistent testimony from Stone—who testified that the gasoline odor remained after officers arrived—and the officers—who denied smelling any gasoline. Although the jury could have believed Stone, there was little evidence of an assault by threat.

---

[5] Stone also testified that Brown yelled several times: "I ain't trippin', I ain't trippin', oh, hoe, ass n****." We need not resolve whether these statements or any others are assaultive threats because Brown does not challenge the sufficiency of the evidence. It suffices to conclude that some evidence of a threat exists.

By contrast, evidence of Brown causing Stone bodily injury was overwhelming and the focus of most of the trial. The jury had far more evidence to convict on this offense alone without resorting to the sparse, contradicted evidence supporting the threat-based offense. That is not to say that no reasonable jury member could have found a threat. Rather, the state of evidence establishes only theoretical harm from the charge, not the actual harm required for reversal. *See Alcoser*, 663 S.W.3d at 165.

### 3.     Argument of Counsel

During closing arguments, the State emphasized that the jury did not have to be unanimous on the various application paragraphs alleging two separate aggravated assault offenses. According to the State, the jury had "to unanimously decide that the defendant committed an aggravated assault with a deadly weapon against Mr. Calvin Stone." But the jury did not "necessarily have to agree on the way that the defendant committed this aggravated assault." Instead, splitting the jury into four equal groups, the State represented that:

- three jurors could "believe that the State has proven beyond a reasonable doubt that the defendant committed an aggravated assault against Mr. Stone by causing bodily injury when he threw the mailbox at him and it struck him";

- three remaining jurors could believe that "this aggravated assault was committed by threatening Mr. Stone with imminent bodily injury and you believe that the State has proven that with the gasoline";

- three remaining jurors could "believe the prong that says threatened with imminent bodily injury with the mailbox"; and

14

- "the last three of you could say that you believe that . . . the way the assault was committed was by threatening Calvin Stone with imminent bodily injury with the metal barbecue pit lid."

Under this scenario in which the jury split its vote four ways on two separate offenses, the State argued that the jury could convict Brown of aggravated assault:

> So, out of the 12 of you then, in that example, you all don't agree on the manner in which this aggravated assault is committed, but you all agree in that example that an aggravated assault with a deadly weapon was committed against Mr. Stone beyond a reasonable doubt.

This was an incorrect statement of the law under well-established precedent, as we discussed above when addressing charge error. *See Landrian*, 268 S.W.3d at 535–37. Moreover, defense counsel did not correct the misstatement of law or otherwise mention jury unanimity during jury argument, leaving the misstatement of law uncontroverted according to both the judge (in the jury charge) and the State (during closing argument). This is the strongest evidence of at least some harm in the record. *See Marinos v. State*, 186 S.W.3d 167, 176 (Tex. App.—Austin 2006, pet. ref'd) ("These erroneous statements accentuated the charge error.").

The State continued its closing argument by briefly addressing the offense based on causing bodily injury, but the State reiterated that the jury need not agree on any one application paragraph (containing two separate offenses). The State then specifically addressed each paragraph based on aggravated assault by threat. The State argued that Stone "was threatened" and "felt threatened" when he saw Brown pouring gasoline, and Stone believed Brown "could have started a fire, could have

15

caused [Stone] imminent bodily injury if he was caught in that fire." In turn, the State addressed allegations that Stone felt threatened by the mailbox and then by the barbecue lid. But these arguments about threats from the mailbox and the barbecue lid really focused on how Brown actually caused injury to Stone. *See id.* at 177 ("It is the interrelated nature of the issues and evidence in this cause that distinguishes it from *Ngo*, in which the court of criminal appeals found the charge error egregiously harmful."). For example, the State argued as follows about threats from the mailbox:

- Stone felt threatened and scared when Brown "ripped out that mailbox from the ground and came up to him on the porch steps and threw it at him like an ax[.]"

- "That metal mailbox not only could have hurt him, but it did. It struck him in the face. It busted his lip. So, yeah, he felt threatened by that."

And the State argued as follows about threats from the barbecue lid:

Well, the same logic applies to the barbecue lid as it does to the mailbox. Mr. Stone was still alone. He was still scared. He still knew that the barbecue lid made of metal could have hurt him. And, in fact, it did hurt him. He got that cut right here on his upper arm. He felt pain from it.

The State then reiterated that to convict Brown, the jury did not have to agree on a particular application paragraph, but it did have to "agree that the State has proven at least one of those paragraphs to you beyond a reasonable doubt."

As a whole, the State's closing argument emphasized the incorrect statement of law, but its arguments about the offense involving threats hinged on the jury finding sufficient evidence of a threat in the first place. As discussed above, the

record contains scant, controverted evidence concerning threats. Stone testified that he was frightened when Brown poured gasoline around his front porch, and the gasoline odor was present when the officers arrived. But the officers denied smelling any gasoline at Stone's house and offered little testimony about the gasoline, which called into question Stone's testimony about this part of the incident. And any evidence of a threat from the mailbox or the barbecue lid focused more on the items causing bodily injury rather than constituting a threat.

Thus, the record does not establish that Brown sustained actual harm, particularly because the evidence of aggravated assault by causing bodily injury was overwhelming while the evidence of aggravated assault by threat was comparatively weak and minor. In other words, there is evidence that some jury members theoretically might have been persuaded by the slim evidence of threats, but this evidence does not rise to the level of actual harm. *See Alcoser*, 663 S.W.3d at 165 ("Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one.").

No other relevant information exists to alter this conclusion. *See id.* Accordingly, we hold that no evidence of actual harm exists in the record as required to show that Brown was egregiously harmed by the jury charge error.

We overrule Brown's sole appellate issue.

17

## Conclusion

We affirm the judgment of conviction.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).